IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TIMOTHY WILLIAMS,           )
                            )
    Plaintiff,               )
                            )
v.                          )    CASE NO. CV415-118
                            )
BOBBY WAITERS,              )
                            )
    Defendant.               )
                            )

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 13.) For the following reasons, Defendant's motion is **GRANTED** as to Plaintiff's claim pursuant to 42 U.S.C. § 1983. As the Court has disposed of all claims over which it had original jurisdiction, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims are **REMANDED** to the State Court of Chatham County. The Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

In the early morning hours of April 10, 2013, Plaintiff and three companions left the Island Breeze restaurant and club after one of them had a verbal altercation. (Doc. 16, Attach. 16 at 15; id., Attach. 17 at 1.) While walking in the area, they heard a series of gunshots and decided to run away to seek

shelter. (Id., Attach. 17 at 2.) They jumped over a wooden privacy fence into the yard of an individual living nearby. (Id.) At the time they entered the yard, at least one member of the group was armed with a handgun. (Id., Attach. 16 at 16.) The resident of that home—Ms. Dennison—saw at least one person in her backyard and outside her window. (Id., Attach. 17 at 2.)

After seeing these unfamiliar individuals in her back yard, Ms. Dennison called 911[1] and flagged down Defendant—a police officer with the Savannah Chatham Metropolitan Police Department ("SCMPD"). (Id. at 7.) Defendant was in the area responding to reports of shots fired. (Id. at 6.) Ms. Dennison told Defendant that "there's two people that broke into my backyard." (Id. at 9.) Although Ms. Dennison did not indicate that there had been a home invasion, Defendant radioed in Ms. Dennison's statements as a possible ongoing burglary and requested additional units. (Id.) Defendant exited his police car and approached the fence enclosing Ms. Dennison's backyard where he saw two individuals climb over the fence and run away. (Id. at 3.)

Shortly after Plaintiff left Ms. Dennison's backyard, he decided to come back over the fence on the west side of the property for his own safety. (Id.) Defendant heard a noise and moved towards that area. (Id., Attach. 16 at 8.) Although it was

---

[1] Ms. Dennison's 911 phone call and conversation with Defendant was recorded. (Id. at 8.)

2

dark, Defendant did not use his flashlight and admitted it was difficult to see. (Id., Attach. 17 at 7.) Ms. Seydler—Ms. Dennison's mother—was standing outside of the front door near Defendant when Plaintiff came over the fence moving towards them. (Id. at 4.) Although Plaintiff denies hearing any commands to stop, several witnesses stated that Defendant yelled at Plaintiff to stop and identified himself as a police officer. (Doc. 13, Attach. 7 at 13; id., Attach. 8 at 5; id., Attach. 10 at 6; id., Attach. 11 at 4; id., Attach. 14 at 1; id., Attach. 15 at 1.)[2] When Plaintiff failed to comply with Defendant's requests, Defendant fired three shots in Plaintiff's direction wounding him in his abdomen. (Doc. 16, Attach. 17 at 8.) Plaintiff believes he was shot either as he hit the ground after scaling the fence or on his way down from the fence. (Id. at 4.)

After Plaintiff was shot, Defendant took him into custody. (Id., Attach. 16 at 12.) Plaintiff was not carrying a weapon, although a handgun was found nearby. (Id. at 13.) Shortly thereafter, Defendant left the scene because he had discharged his service weapon and was subject to an investigation. (Id. at 14.) As a result, Defendant was not Plaintiff's arresting officer. (Id.) When asked why he was shot, Plaintiff stated that

---

[2] See Bodden v. Bodden, 510 F. App'x 850, 852 n.2 (11th Cir. 2013) ("We need not adopt [Plaintiff's] version of the facts to the extent it is clearly contradicted . . . such that no reasonable jury could believe it.").

3

"I guess I was shot to put me down. I guess [Defendant] was scared for his own life." (Id. at 17.) Plaintiff was not charged with burglary. (Doc. 13, Attach. 19.) He was charged with one count of criminal trespass and one count of loitering and prowling. (Id.)

The SCMPD investigated the incident and determined that Defendant violated several SCMPD policies. (Doc. 16, Attach. 17 at 12.) SCMPD policy prohibits an officer from using a firearm to subdue a misdemeanor or felony suspect attempting to escape and who does not present an imminent threat of death or serious injury to the officer or others. (Id. at 13.) SCMPD also prohibits an officer from using a firearm to stop a fleeing person who is guilty only of suspicious conduct. (Id.) Finally, SCMPD policy sets requirements for officers using their weapons in reduced lighting including that officers learn how to produce their flashlights. (Id. at 12.) Defendant was found to have violated the policy regarding the use of deadly force and the prohibited use of firearms. (Doc. 16, Attach. 15 at 3.) Defendant was also investigated for failing to truthfully report a shooting incident, but was not found to have violated that policy. (Id.) Defendant was ultimately terminated from employment with the SCMPD as a result of this investigation. (Id., Attach. 17 at 13.)

On March 31, 2015, Plaintiff filed suit in the State Court of Chatham County. (Doc. 1, Attach. 1 at 1.) He brought state charges for assault, battery, negligent breach of ministerial duty, intentional infliction of emotional distress, attorney's fees, and punitive damages; as well as a federal charge pursuant to 42 U.S.C. § 1983. (Id.) On May 6, 2015, the case was removed to federal court because of the presence of a federal question. (Doc. 1.) On March 30, 2016, Defendant filed the instant motion to dismiss. (Doc. 13.) Defendant argues that he is entitled to qualified immunity as to the § 1983 claim because a reasonable officer would have determined that the force used was necessary under the circumstances. (Id.) Plaintiff argues that Defendant is not entitled to qualified immunity because Plaintiff was not hiding from Defendant, had no weapon, and did not disobey any commands that he heard. (Doc. 16, Attach. 1 at 15-16.)

**ANALYSIS**

I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the

proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. <u>Matsushita</u>, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See</u>, e.g., <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. <u>QUALIFIED IMMUNITY ANALYSIS</u>

42 U.S.C. § 1983 allows Plaintiff to pursue a civil suit against an individual who under color of state law causes the deprivation "of any rights, privileges, or immunities secured by the Constitution and laws." Certain individuals are exempt from civil damages pursuant to 42 U.S.C. § 1983 when "their conduct does not violate <u>clearly established statutory or constitutional rights</u> of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citing <u>Procunier v. Navarette</u>, 434 U.S. 555, 565 (1978); <u>Wood v. Strickland</u>, 420 U.S. 308, 322 (1975)). This exemption is commonly referred to as qualified immunity and is "<u>immunity from suit</u> rather than a mere

7

defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). In order to be entitled to qualified immunity, defendants must show "that [they were] acting within the scope of [their] discretionary authority." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). In this case, Plaintiff does not challenge that Defendant was operating within the scope of his discretionary authority.

Upon a determination that a defendant was acting within his discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346). To determine whether a defendant is entitled to qualified immunity, the Court must determine whether the defendant's conduct violated a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Court must also evaluate "whether the right was clearly established." Id. (citing Saucier v. Katz, 533 U.S. 914 (2001)).

In this case, Plaintiff argues that Defendant used excessive and deadly force when Defendant shot Plaintiff. (Doc. 16, Attach. 1.) Excessive force claims are "most properly characterized as . . . invoking the protections of the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 395 (1989). In order

8

to establish a Fourth Amendment violation, the Court must evaluate "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." Vinyard, 311 F.3d at 1347 (citing Graham, 490 U.S. at 396-97; Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)). The Court should recognize that officers often make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Plumhoff v. Rickard, ___ U.S. ___, 134 S. Ct. 2012, 2020 (2014) (quoting Graham, 490 U.S. at 396-97). The Eleventh Circuit Court of Appeals has acknowledged that officers may use deadly force when an officer

> (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009) (quoting Vaughan v. Cox, 343 F.3d 1323, 1329 (11th Cir. 2004)).

Once a Court establishes a violation of a plaintiff's Constitutional rights, the Court must determine whether that right was clearly established. Pearson, 555 U.S. at 232. Accordingly, " '[t]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair

warning' to the defendant[] 'that the[] alleged conduct was unconstitutional.'" Tolan v. Cotton, ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). "To determine whether a right was clearly established, we look to binding decisions of the Supreme Court of the United States, [the Eleventh Circuit Court of Appeals], and the highest court of the relevant state." Valderrama v. Rousseau, 780 F.3d 1108, 1112 (11th Cir. 2015). Generally, the absence of on point case law indicating that a right is clearly established entitles a defendant to qualified immunity. Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000). However, one exception allows a court to find a clearly established constitutional violation when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." Id.

Defendant is entitled to qualified immunity in this case. A reasonable officer would have probable cause to believe that Plaintiff represented a threat of serious physical harm either to the officer or to others. McCullough, 559 F.3d at 1206; see also Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (finding qualified immunity where suspect "posed a threat of serious physical injury to [the o]fficer [] and to citizens

in the surrounding residential area"). The evidence Plaintiff presents indicates that Defendant was in the area after responding to reports of shots fired during the early morning hours. Ms. Dennison flagged down Defendant and indicated that unidentified individuals had broken into her backyard. Based on this brief information, Defendant reported that he was responding to a burglary. Defendant observed several individuals leave the backyard by climbing over the fence. Defendant then heard Plaintiff reenter the side yard by climbing over the fence and come towards Defendant and Ms. Seydler. Multiple witnesses reported Defendant identifying himself as a police officer and ordering Plaintiff to stop moving. Plaintiff was shot when he failed to respond to Defendant's requests and Plaintiff himself acknowledges that he was shot because Defendant feared for his life.

This split-second decision Defendant made regarding the applicable force to be used during a potential burglary, after shots had been fired, and when an unidentified individual was approaching the officer and a bystander was objectively reasonable. Plumhoff, 134 S. Ct. at 2020. This analysis does not change simply because after the shooting, the evidence indicated that Plaintiff was not armed, was not charged with burglary, or that Defendant misremembered certain aspects of the incident. See Robinson v. Arrugueta, 415 F.3d 1252, 1256 (11th Cir. 2005)

(supporting a finding of qualified immunity even if "in hindsight" the facts indicated Defendant could escape unharmed); Penley v. Eslinger, 605 F.3d 843, 854 (11th Cir. 2010) (finding officer's use of deadly force reasonable where individual held modified toy gun). Instead, the Court must assess the facts in the light of the reasonable officer <u>at the time of the event</u>.

Plaintiff does not carry his burden of showing that qualified immunity is inapplicable. First, Plaintiff points to no case law placing Defendant on notice that Defendant's actions violated a clearly established constitutional right. Plaintiff cites to <u>Harrell v. Decatur Cty.</u>, 22 F.3d 1570 (11th Cir. 1994) for the proposition that a reasonable officer would not have believed the use of deadly force was appropriate. (Doc. 16, Attach. 1 at 15.) However, <u>Harrell</u> was vacated upon rehearing and so offers Plaintiff no support. 41 F.3d 1393 (11th Cir. 1995). Second, the cases addressing fleeing felons do not provide support for Plaintiff because Plaintiff acknowledges he was approaching Defendant when Plaintiff was shot. Finally, the Court does not conclude that the split-second decision Defendant made in an effort to protect himself and others "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." <u>Priester</u>, 208 F.3d at 926. Considering all these facts—even in

the light most favorable to Plaintiff—the Court must conclude that Defendant is entitled to qualified immunity. See Bodden v. Bodden, 510 F. App'x 850, 852 (11th Cir. 2013) ("In light of the information available to [officer] and the tense, uncertain, and rapidly evolving situation he confronted, we conclude the use of deadly force was objectively reasonable and decline to second-guess his split-second judgment." (citing Penley, 605 F.3d at 850)). Because Defendant is entitled to qualified immunity, his Motion for Summary Judgment (Doc. 13) is **GRANTED** as to Plaintiff's 42 U.S.C. § 1983 claim.

III. PLAINTIFF'S STATE LAW CLAIMS

28 U.S.C. § 1367(c)(3) allows a Court to decline to exercise supplemental jurisdiction when a Court has dismissed all claims over which it has original jurisdiction. This Court has granted summary judgment to Defendant on Plaintiff's 42 U.S.C. § 1983 claim, which is the only claim in this case over which the Court has original jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Accordingly, Plaintiff's state law claims are **REMANDED** to the State Court of Chatham County. See 28 U.S.C. § 1447.

**CONCLUSION**

For the foregoing reasons, Defendant's motion is **GRANTED** as to Plaintiff's claim pursuant to 42 U.S.C. § 1983. As the Court has disposed of all claims over which it had original

13

jurisdiction, the Court declines to exercise jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims are **REMANDED** to the State Court of Chatham County. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 28th day of March 2017.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA